### WEINARD v. CHICAGO, M. & ST. P. RY. CO.

(District Court, D. Minnesota, Fourth Division. March 8, 1924.)

**1. Commerce ⬤⟞81—Statute making foreign railroad's ticket and freight agents its agents to receive service of process held interference with commerce.**

As respects suits for personal injuries occurring in another state to employee of foreign railroad, who is not citizen of Minnesota Gen. St. Minn. 1913. § 7736, providing that any foreign railroad ticket or freight agent within state may be served with summons for corporation within county where action is brought, is unconstitutional, as unreasonably burdening interstate commerce, regardless of fact that railroad has trackage in Minnesota.

**2. Courts ⬤⟞323—Evidence held to warrant finding injured railroad employee was resident of Washington, and not of Minnesota, as alleged in affidavit.**

In action by employee against railroad for personal injuries sustained at Tacoma, Wash., plaintiff's affidavit that, after accident and before commencing suit, he became resident of Minnesota, *held* overcome by his admission that he subsequently stated on his medical examination that he was resident of Tacoma, and warranted finding that his residence was in Tacoma.

**3. Attorney and client ⬤⟞32—Affidavit of attorney held to admit charge of "ambulance chasing" made by defendant.**

In employee's action against railroad for personal injuries, affidavit of plaintiff's attorney, answering railroad's affidavit charging "ambulance chasing," fairly read, and considering that facts were within affiant's personal knowledge, *held* to admit charge that 'affiant's firm had indulged in practice charged, but that in doing so they acted alone, and not in contact with any other attorneys.

**4. Attorney and client ⬤⟞189—Objections to dismissal of action, filed by plaintiff's attorneys, held to disclose attorneys' relation to plaintiff was not merely professional.**

Objections by plaintiff's attorneys to dismissal of employee's action against railroad for personal injuries, on ground that they were employed on contingent basis, and had received no compensation for services rendered, and had advanced plaintiffs $600 to $700, in addition to retaining 'doctors to give him medical treatment, *held* to corroborate charges of improper conduct by attorneys, and to disclose that their relation to plaintiff had ceased to be merely professional.

---

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by Joseph Weinard against the Chicago, Milwaukee & St. Paul Railway Company. On defendant's motion to quash and set aside service of summons. Motion granted.

Dahl & McDonald, of Minneapolis, Minn., for plaintiff.

F. W. Root, C. O. Newcomb, and A. C. Erdall, all of Minneapolis, for defendant.

McGEE, District Judge. [1] This, a personal injury action, was commenced in this court on the 22d day of August, 1923, by the plaintiff, a resident and citizen of the state of Washington, against the defendant railway company, a corporation and a citizen of the state of Wisconsin. The plaintiff seeks to recover from the defendant damages, stated in his complaint at $50,000, for injuries alleged to have been sustained by him while in the employ of the defendant as a boiler maker's helper in the general shops of the defendant at Tacoma, in the state of Washington, on the 21st day of May, 1923.

The case is before the court at this time on a motion, made on behalf of the defendant, to quash and set aside the service of the summons on the following grounds:

(1) That at the time of the pretended service of the summons and complaint herein the defendant was a foreign corporation, to wit, a citizen and resident of the state of Wisconsin, and the plaintiff was not a citizen or resident of the state of Minnesota, but was, to wit, a citizen and resident of the state of Washington, and that the cause of action set forth in the complaint did not arise within the state of Minnesota, and that this defendant is a common carrier by railroad for hire, and that as such it is engaged and engaging in interstate commerce between the several states by railroad.

(2) That section 7736, General Statutes of Minnesota for 1913, under which said pretended service of summons was attempted to be made, is void, and is in contravention of the Constitution of the state of Minnesota and the Constitution of the United States, and particularly is void and is in contravention of Article 1, § 7, of the Constitution of the state of Minnesota, and in contravention of article 1, § 8, subd. 3, of the Constitution of the United States, and in contravention of article 14, § 1, Amendments to the Constitution of the United States.

(3) That said pretended service is void and of no effect, for the reason that the statute under which the same was attempted to be made is void, as aforesaid, and that said court is prohibited from taking jurisdiction of this defendant in said action, because the taking of such jurisdiction will substantially and unduly interfere with and burden interstate commerce.

It is contended on behalf of the defendant that the case is controlled by the case of Davis, Director General, v. Farmers' Co-operative Equity Co., 262 U. S. 312, 43 Sup. Ct. 556, 67 L. Ed. 996. In that case the service was made under the authority of section 7735, General Statutes of Minnesota 1913, which provides that:

"Any foreign corporation having an agent in this state for the solicitation of freight and passenger traffic or either thereof over its lines outside of this state, may be served with summons by delivering a copy thereof to such agent."

In the Davis Case, section 7735 was held to be violative of the commerce clause of the Constitution of the United States, and for that reason was declared to be unconstitutional and void. The service in the instant case was made under section 7736 of the same statute, and is assailed on the ground that proved fatal to section 7735 in the case mentioned. Section 7736 provides that:

"In any action or proceeding against a railway company, whether domestic or foreign, including proceedings under the right of eminent domain, service of the summons and of all notices required to be served therein may be made by delivering a copy thereof to any ticket or freight agent of such company within the county in which the action or proceeding is begun, with the same effect as though made pursuant to § 7735: Provided that, if such company shall appear in an action by a resident attorney, service shall thereafter be made upon such attorney."

Referring to section 7735, and it would seem that the language used is equally applicable to section 7736, General Statutes 1913, Mr. Justice Brandeis, speaking for the court in the Davis Case, supra, said:

"As construed by the highest court of Minnesota, this statute compels every foreign interstate carrier to submit to suit there as a condition of maintaining a soliciting agent within the state. Jurisdiction is not limited to suits arising out of business transacted within Minnesota. Compare Mitchell Furniture Co. v. Selden Breck Construction Co., 257 U. S. 213; Missouri Pacific R. R. Co. v. Clarendon Boat Oar Co., 257 U. S. 533; Chipman, Limited, v. Thomas B. Jeffery Co., 251 U. S. 373. It is asserted, whatever the nature of the cause of action, wherever it may have arisen, and although the plaintiff is not, and never has been, a resident of the state. Armstrong Co. v. New York Central R. R. Co., 129 Minn. 104; Lagergren v. Pennsylvania R. R. Co., 130 Minn. 35; Rishmiller v. Denver & Rio Grande R. R. Co., 134 Minn. 261; Merchants' Elevator Co. v. Chesapeake & Ohio Ry. Co., 147 Minn. 188; Callaghan v. Union Pacific R. R. Co., 148 Minn. 482. This condition imposes upon interstate commerce a serious and unreasonable burden, which renders the statute obnoxious to the commerce clause. Compare Sioux Remedy Co. v. Cope, 235 U. S. 197, 203."

Every factor present in the Davis Case is presented by the record in the instant case, with this difference—that in the Davis Case the railroad corporation involved had no trackage in the state of Minnesota, while in the present case nearly 12 per cent of the defendant's mileage is within the borders of Minnesota. The question is whether the fact of the presence of trackage in the state renders inapplicable to the instant case the rule announced in the Davis Case. I do not think so.

The present case is one presenting in principle the same, and in degree very much greater, interference with, and obstruction to, interstate commerce than was presented by the facts in the Davis Case. The proofs submitted by the defendant show that it would be required to bring a large number of witnesses to Minneapolis from Tacoma, involving a round trip of 3,574 miles, at great expense, depleting, to the extent of the number of witnesses so taken from their work, the shop force of the defendant at Tacoma, and would increase very materially the expense of the trial over what would be incurred if the case were tried where it arose, at Tacoma, Wash. It is also claimed, and is undoubtedly true, that having to try the case at such a great distance from the point at which the injuries were received would disable the defendant from meeting facts that might be developed on the trial by the

plaintiff, which could readily be met if the case were tried where the accident occurred, or within a reasonable distance of that place, instead of at a distance measured by half the width of the continent.

The showing is also made that, due to the prevalence in the Twin Cities of an alleged practice participated in by a considerable number of attorneys, personal injury cases against interstate carriers are brought by hundreds 'from great distances and from all parts of the United States, and commenced in the courts of Minnesota, and that the combined and cumulative effect of that practice generally designated as "ambulance chasing" is to underman the shop forces and train crews of interstate railroads, and to enormously increase the operating expenses of such interstate carriers, which expense must be met by increased rates on interstate traffic, and which, in turn, affects the general public making use of the facilities of such carriers.

In the Davis Case, referring to this phase of the case, Mr. Justice Brandeis said:

"That the claims against interstate carriers for personal injuries and for loss and damage of freight are numerous; that the amounts demanded are large; that in many cases carriers deem it imperative, or advisable, to leave the determination of their liability to the courts; that litigation in states and jurisdictions remote from that in which the cause of action arose entails absence of employees from their customary occupations; and that this impairs efficiency in operation, and causes, directly and indirectly, heavy expense to the carriers—these are matters of common knowledge. Facts, of which we also take judicial notice, indicate that the burden upon interstate carriers imposed specifically by the statute here assailed is a heavy one, and that the resulting obstruction to commerce must be serious."

At this point in the opinion reference is made to the following, which appears in a marginal note:

"A message, dated February 2, 1923, of the Governor of Minnesota to its Legislature, recites that a recent examination of the calendars of the district courts in 67 of the 87 counties of the state disclosed that in those counties there were, then pending 1,028 personal injury cases, in which nonresident plaintiffs seek damages aggregating nearly $26,000,000 from foreign railroad corporations which do not operate any line within Minnesota."

The opinion then continues:

"During federal control absences of employees incident to such litigation were found, by the Director General, to interfere so much with the physical operation of the railroads, that he issued General Order No. 18 (and 18a) which required suit to be brought in the county or district where the cause of action arose or where the plaintiff resided at the time it accrued. That order was held reasonable and valid in Alabama & Vicksburg Ry. Co. v. Journey, 257 U. S. 111. The facts recited in the order, to justify its issue, are of general application, in time of peace as well as of war. * * * It may be that a statute like that here assailed would be valid, although applied to suits in which the cause of action arose elsewhere, if the transaction out of which it arose had been entered upon within the state, or if the plaintiff was, when it arose, a resident of the state. These questions are not before us; and we express no opinion upon them. But orderly, effective administration of justice clearly does not require that a foreign carrier shall submit to a suit in a state in which the cause of action did not arise, in which the transaction giving rise to it was not entered upon, in which the carrier neither owns nor operates a railroad, and in which the plaintiff does not reside. The public and the carriers are alike interested in maintaining adequate uninterrupted transportation service at reasonable cost.

This common interest is emphasized by Transportation Act 1920, which authorizes rate increases necessary to insure to carriers efficiently operated a fair return on property devoted to the public use. See Railroad Commission of Wisconsin v. Chicago, Burlington & Quincy R. R. Co., 257 U. S. 563; New England Divisions Case, 261 U. S. 184. Avoidance of waste, in interstate transportation, as well as maintenance of service, has become a direct concern of the public. With these ends the Minnesota statute, as here applied, unduly interferes. By requiring from interstate carriers general submission to suit, it unreasonably obstructs, and unduly burdens, interstate commerce."

The affidavit submitted in support of the general charge of "ambulance chasing" is startling in its allegations, among which are the following:

(1) That the defendant has an operating mileage of 16,098.58 miles, extending through 14 states, including the states of Minnesota and Wisconsin, with about 12 per cent. of its mileage in the state of Minnesota; that the injuries complained of were sustained at the city of Tacoma, in the state of Washington, 1,787 miles distant from the city of Minneapolis, Minn.; that the plaintiff is, and at the time the cause of action arose was, a citizen of the state of Washington and a resident of the city of Tacoma in that state, and defendant is a corporation and citizen of the state of Wisconsin.

(2) That the plaintiff's attorneys, Dahl & McDonald, reside at Minneapolis, Minn., are now, and have been for more than three years past, engaged in the business of soliciting and prosecuting personal injury claims and actions against railroads doing an interstate business, including the defendant, and principally upon claims and actions in which the cause of action arose and the claimant or plaintiff resided at points beyond the confines of the state of Minnesota, usually distant more than 300 miles, by the customary routes of travel, from the county in which such actions were commenced.

(3) That the plaintiff's attorneys, since the expiration of General Orders Nos. 18 and 18A of the Director General of Railroads of the United States, have employed and maintained solicitors of such claims and actions, and that such solicitors, as affiant is informed and believes, reside or travel about in most, if not all, of the states above mentioned, as well as other states, soliciting such claims and actions against the defendant and other railroad companies, and are in many instances paid by said Dahl & McDonald sums depending upon the number of claims or actions secured by such solicitors and the amount realized by said Dahl & McDonald for such claimants and plaintiffs in the prosecution of such claims, and that such actions, so solicited, are almost invariably commenced within the state of Minnesota.

(4) That beside said firm of Dahl & McDonald there are other attorneys residing in the cities of St. Paul and Minneapolis, Minn., in number more than 15, who are likewise engaged in the practices aforesaid; that said practices have resulted in the bringing of great numbers of suits in Minnesota by the attorneys engaged in such soliciting against railroad companies not residents of Minnesota, in which the causes of action arose outside of and the plaintiffs were nonresidents of the state of Minnesota; that on the information and belief of affiant the number of such actions so commenced since March 1, 1920, far exceeds in number 100, and the sums demanded therein greatly exceed $26,-000,000.

(5) That said organized solicitation of claims and actions and removal of the same for trial to places far distant from the point where the injuries occur is leveled and operated against this defendant, as well as other railroads engaged in interstate commerce; that the demands made in and by such actions against said railroads, and this defendant particularly, are grossly exorbitant, and that in the defense of such actions it is in many instances necessary, in order to make such defense, that large numbers of witnesses, employees engaged actively in interstate commerce, be taken away from their homes and their places of occupation for periods varying from a few days to upwards of two weeks more than would be required if such actions were tried in the state where such actions arose; that it frequently occurs during the trial of such actions that evidence is given on the part of the plaintiff which could not be previously anticipated by the defendant, but which could be rebutted by witnesses if the place of trial were in the jurisdiction of the occurrence of the accident, but which cannot be rebutted at the place of trial selected by said attorneys for plaintiffs, because the distance from the residence of such rebutting witnesses is too great to allow such witnesses to arrive at the trial before the close thereof.

(6) That at times it is so difficult for witnesses to travel the long distances aforesaid that they decline to attend such trials, necessitating trial without such testimony, or the taking of depositions by the defendant at considerable expense, and without the jury having the opportunity to observe such witnesses while testifying; that the expense to the defendants in such actions so imported and brought is usually more than treble the expense of trial in the jurisdiction in which said actions arose.

(7) That such attorneys are in addition engaged in the bringing of actions involving the transportation of freight within the state of Minnesota, which transportation in no manner involves any connection with the state of Minnesota or any railroad located therein, in which cases the defendants are met with the same situation as hereinbefore set forth.

(8) That since March 1, 1920, the date of expiration of federal control, 224 actions have been commenced within the state of Minnesota against the defendant, in which more than $9,000,000 was claimed as damages, which actions were brought for personal injuries or death, and in all of which the cause of action arose outside the state, and the person injured or killed did not reside in the state of Minnesota at the time of the happening of said accident, and in which the person injured in no case resided within the state of Minnesota at the time such cause of action arose or suit was commenced.

(9) That during the same period 191 actions were brought against this defendant, in which the person injured either resided within the state of Minnesota at the time of the injury or in which state he resided when the action was brought, and in such actions the sum of $2,995,000 was claimed; that said actions imported into the state of Minnesota have been brought from the states of Washington, Idaho, Montana, North Dakota, South Dakota, Wisconsin, Illinois, Michigan, Indiana and Iowa; 14 have been brought from the state of Washington, 31 have

been brought from the state of Montana, and the balance of said 224 imported from the other states through which this defendant maintains its line of railroad, exclusive of the state of Minnesota.

(10) That in said foreign actions the witnesses for the most part reside outside the state of Minnesota; that in many of said actions such witnesses were brought to Minnesota by defendant; that for the most part such witnesses were engaged in interstate commerce; that in the defense of some of said actions this defendant has been required to take from interstate commerce as high as 29 witnesses, and to transport them for over 1,000 miles away from their places of occupation, and has so interfered with interstate commerce thereby that certain train movements have had to be canceled and annulled on account of the absence of the necessary employees to operate the same while said witnesses were away from their homes attending trials in the state of Minnesota.

(11) That a considerable number of such imported actions against the defendant have been settled, and that in the settlement thereof the defendant has been induced to pay sums larger than would be otherwise warranted, on account of the difficulties of defending such actions under the circumstances above set forth.

(12) That there are now pending against this defendant in the state of Minnesota more than 35 actions in which the personal injury or death complained of occurred outside the state of Minnesota, and in which the person injured or killed was not a resident of the state of Minnesota, nearly all of which actions are now upon court calendars for trial, the aggregate amount claimed therein being more than $700,-000.

(13) That said practices very greatly increase the time wasted by witnesses while awaiting the commencement of said trials, because it is usually uncertain when such trials will commence, and it is impossible to bring witnesses the long distance necessary on short notice.

(14) That the activities aforesaid of each of said soliciting attorneys aids the others in said practice, by advertising the advantages to plaintiffs of trying said actions at points far distant from the place of the occurrence of the injury, and that in matters generally affecting the prospering of the said business of importing such actions into Minnesota, all or nearly all of said soliciting attorneys usually act in unison and concert to increase and protect the practices aforesaid.

(15) That the effect of said practices, and of the said practices of Dahl & McDonald, is and has been to substantially and unduly interfere with interstate commerce; that in the above-entitled action all of the witnesses reside within the state of Washington; that a number of them are actively engaged in conducting the interstate commerce business being transacted by the defendant, and that it will be required to bring to the place of trial a large number of said witnesses, and to transport them in coming to and going from the place of trial to their homes, a distance of approximately 3,500 miles; that it consumes approximately four days for said witnesses to come from their homes to the place of trial and four days in addition to return again thereto; that all of said witnesses are necessary and material witnesses, without whose presence the defendant cannot safely go to trial; that the ap-

proximate expense of bringing said witnesses to the place of trial will be in excess of $1,000.

(16) That the city of Tacoma is the county seat of Pierce county, in which city both the plaintiff and all of the witnesses to said accident reside; that in said city both the state district court, which has jurisdiction of such actions, as well as the District Court of the United States, which likewise has jurisdiction of said actions, sit at regular terms, and that at the time of the happening of the accident complained of, and at the time of the commencement of this action, this defendant was subject to service of process in the county of Pierce, in the state of Washington, issuing out of either the district court of the state of Washington or out of the District Court of the United States, and said action can be brought against said defendant by the plaintiff in the county of his residence and the county where his cause of action accrued, and at which place the witnesses engaged in interstate commerce will not be withdrawn from their interstate commerce work for a period of more than three days.

(17) That some of said witnesses are in directive capacities having numbers of other employees under their supervision, which witnesses direct, handle, and operate the movement of trains, both passenger and freight, in interstate commerce, and that by virtue of their positions and their experience it is impossible to obtain substitutes during their absence from their said work, and the work of handling trains engaged in hauling interstate commerce and keeping up equipment engaged therein will be seriously interfered with.

(18) That, if the court takes jurisdiction of and tries this case, interstate commerce will be substantially and unduly interfered with because of the withdrawal of said witnesses in such commerce and the expense and waste incident to the transporting of said witnesses to said place of trial, and on account of the hazards of litigation specially incident to trials at points distant from the place of accident, and on account of this action being part and parcel of said general plan of importing cases into the state of Minnesota.

[2] The only efforts made by plaintiff or his attorneys to controvert the foregoing matter contained in the Newcomb affidavit were:

(1) An affidavit of the plaintiff, dated the 25th of September, 1923, and used on the pending motion, which reads as follows:

"That plaintiff is now, and ever since the 31st day of July, 1923, has been, a resident of the city of Minneapolis, and residing here with his family, consisting of his wife and three minor children; that he retained Dahl & McDonald, of the city of Minneapolis, Minn., as his attorneys on the 31st day of July, 1923, at the city of Minneapolis, Minn.; that, ever since the time of plaintiff's injuries set forth in said complaint, plaintiff has been unable to earn any money, and is now without any means whatsoever or credit, and that it would be a great hardship for affiant to have his cause tried outside of the state of Minnesota; that all the witnesses upon whose testimony he proposes to rely, reside in the city of Minneapolis, Minn."

The defendant procured an order of this court requiring the plaintiff to appear in court and submit to cross-examination on the statements contained in the foregoing affidavit. The testimony of the plaintiff so taken at that time satised me that he was testifying falsely, and that his testimony was purposely shaped so as to avoid the effect in

part of the rule laid down by the Supreme Court of the United States in the Davis Case, supra.

While stating under oath in the affidavit that he had become a resident of the city of Minneapolis on the 31st day of July, 1923, on the cross-examination mentioned, he admitted that subsequent to that date, and on the 5th day of September, 1923, while being examined by medical men in the employ of the defendant, in answer to a question as to where he then resided, stated that he resided in the city of Tacoma, in the state of Washington. The attempt to impeach the allegation of his complaint in the action as to his place of residence was a failure. I find that the plaintiff's place of residence at the time he received his injuries, at the time of the commencement of the action, and when he was cross-examined as aforesaid, in fact was in the city of Tacoma, Wash.

[3] (2) The affidavit of John F. Dahl, one of the attorneys, which is as follows:

"State of Minnesota, County of Hennepin—ss.:

"John F. Dahl, being duly sworn, says that he is one of the attorneys for the plaintiff in the above-entitled action; that at the time of the service of the complaint and the summons in said action plaintiff was, as this affiant is informed and believes, a resident of the state of Minnesota, and still is a resident of the state of Minnesota; that the witnesses upon whose testimony plaintiff relies to prove his cause of action reside in the state of Minnesota; that since the time of plaintiff's injuries, as set forth in the complaint herein, plaintiff has been unable to earn any money, and is now without any means, and it would be a hardship for him to bring his action, or try the same, outside of the state of Minnesota.

"Affiant has read the affidavit of C. O. Newcomb, on file herein, and denies that Dahl & McDonald, as set out in said affidavit, have been for more than three years engaged in the business of soliciting personal injury claims against defendant or any interstate railroads; that affiant has been associated with said McDonald for six months, and during said time, to affiant's knowledge, in no action brought against defendant or any other railroad has any exorbitant demand been made, and at no time has affiant or said McDonald acted in unison and concert with any other attorneys; that this action was brought in this court for no reason, and with no purpose of obtaining any unreasonable settlement, or causing any interference with the business of defendant.

"On information and belief affiant says that no interstate commerce will be substantially or unduly interfered with because of any necessity of defendant to withdraw witnesses from such commerce.

"[Signed]  John F. Dahl.

It will be noted that the rather startling allegations contained in the Newcomb affidavit are practically admitted to be true by a failure to traverse them. The statement in the Dahl affidavit, which is on information and belief only, that the witnesses upon whose testimony the plaintiff relies to prove his cause of action reside in the state of Minnesota, is disproved by the testimony of plaintiff on his cross-examination, which took place on the hearing of the motion herein. The statement that at the time of the service of the summons and complaint in said action plaintiff was, as the affiant (Dahl) is informed and believes, a resident of the state of Minnesota, and is still a resident of the state of Minnesota, is an attempt to directly falsify and impeach the allegation which affiant himself inserted in the plaintiff's complaint,

presumably on information obtained from the plaintiff, in order to show the requisite diversity of citizenship to entitle the plaintiff to bring the action in this court, and, as above stated, is directly contradicted by the plaintiff's testimony on his cross-examination aforesaid.

The testimony fails to show that any of the witnesses who were present at the time and place the accident occurred reside, or ever did reside, in the state of Minnesota. It will also be noted that the Dahl affidavit does not deny that the affiant or his partner, McDonald, for the length of time stated by Newcomb, has been, or that both of them as individuals have been, engaged in the practice mentioned, but it is a denial that the firm of Dahl & McDonald as a firm has been for more than three years engaged in the business of soliciting personal injury claims against the defendant, or any interstate railway, and the denial is apparently predicated upon the other statement, contained in the Dahl affidavit, that the firm as a firm has only existed six months, and therefore could not have been so engaged for three years; but there is no statement in the affidavit that the members of the firm, as individuals, had not been so engaged, nor is there any denial that the firm during the six months period of its existence has been engaged in the practices alleged in the Newcomb affidavit. The affidavit, fairly read, considering that the facts were entirely within the personal knowledge of the affiant, must be regarded as admitting that Dahl & McDonald, as a firm did, during the six months that the firm has existed indulged in the practices mentioned, but that in doing so the members thereof acted alone, and not in unison or concern with any other attorneys.

[4] (3) A written statement, over the signature of the plaintiff's attorneys, designated "Objection to Dismissal of Cause," dated November 28, 1923, and filed the same date, which reads as follows:

"The undersigned, attorneys for plaintiff in the above-entitled action, hereby object to the case above named being dismissed by plaintiff, for the reason that the undersigned attorneys for said plaintiff have been retained by said plaintiff in said cause on a contingent basis of 33⅓ per cent. of the amount recovered in said action; that said attorneys have performed their services, and performed their part of the contract between said attorneys and plaintiff; that no money has been paid said attorneys; that said attorneys have advanced said plaintiff money between $600 and $700, and in addition thereto have retained doctors to give plaintiff medical treatment; that under the terms, conditions, and agreement of said contract the undersigned, as attorneys for plaintiff, have and intend to hold a lien for services in said action for 33⅓ per cent. of the amount paid either by suit or settlement, and in addition thereto a lien upon said cause for the money so advanced and expenses incurred in caring for plaintiff, and in the prosecution of said action.

"The undersigned further allege, upon information and belief, that said defendant and plaintiff are negotiating a settlement of said cause directly, without the consent of the undersigned attorneys, and are attempting to fraudulently defraud the undersigned attorneys out of the money due them in said action; that certain representatives of defendant and its claim department have been for some time attempting to settle directly with plaintiff, without the consent of the undersigned attorneys.

"Wherefore, the undersigned attorneys respectfully request the above-named court and the clerk thereof not to enter a dismissal in said cause at the request of plaintiff, or any one else, without the consent of the undersigned.

"Dated November 28, 1923.
            "[Signed]   Dahl & McDonald, Attorneys for Plaintiff."

The objections filed by the plaintiff's attorneys, and above set forth, lend corroboration to some of the charges contained in the Newcomb affidavit, and disclose that the relation of the attorneys mentioned to the plaintiff and his cause of action has ceased to be merely a professional one.

I fail entirely to grasp the reasoning and logic of the opinion of Mr. Justice Brandeis, in the Davis Case, supra, if it is not controlling and decisive of the instant case as the same was presented on the hearing of the pending motion.

It is to be hoped that this question will soon be definitely settled by the Circuit Court of Appeals of the Eighth Circuit, or the Supreme Court of the United States. Having reached the conclusion indicated, it follows that the motion to quash and set aside the service of the summons and to dismiss the action should be granted.

With the instant case, and numbered 1185 and 1186, respectively, are the cases of William R. Anderson and Fred Probert against the same defendant, commenced in this court by the same attorneys and on the same date. The causes of action in the three cases arose in the general shops and switchyards of the defendant in the city of Tacoma, in the state of Washington, and a motion to quash and set aside the service of the summons was made in each of the cases, at the same time and on exactly the same showing.

For the reasons stated herein, and in Chunes v. Duluth, Winnipeg & Pacific Railway Company, 298 Fed. 964, the clerk of this court is directed forthwith to prepare and transmit to the State Board of Law Examiners a certified copy hereof, and of the record in the instant case, as well as in the cases of Anderson and Probert against the same defendant, above mentioned, for such action as to that board shall seem appropriate. The conclusion reached results in the order granting the defendant's motion herein.