[Civ. A. No. 338. Appellate Department, Superior Court, City and County of San Francisco.—July 7, 1933.]

EVAN H. WINFIELD, Appellant, v. UNITED FRUIT COMPANY (a Corporation), Respondent.

(2 Cal. Supp. 71.)

B. E. Kragen and Derby, Sharp, Quinby & Tweedt for Appellant.

Pillsbury, Madison & Sutro for Respondent.

GOODELL, J.—Defendant, a New Jersey corporation, operates a fleet of three, and sometimes more, steamships between the port of San Francisco and certain points in Central and South America. The vessels touch at Los Angeles on their north-bound trips. Appellant was hired by respondent at San Francisco as a storekeeper aboard the S. S. "Chiriqui" for her voyage from San Francisco to Port Armuelles, Panama, and return to San Francisco. While at sea off the Central American coast, plaintiff suffered an injury for which he brought this action in the municipal court, under the so-called Jones Act, being section 33 of the United States Merchant Marine Act of 1920 (46 U. S. C. A., sec. 688), claiming $2,000 damages. Summons was served in San Francisco upon defendant's manager, and defendant appeared specially and moved to quash the service upon the ground that it was a New Jersey corporation; that the cause of action sued upon did not arise in California or relate to business or transactions within this state, and that the court had no jurisdiction of the subject matter or of the person of the defendant. The motion was heard upon affidavits and oral testimony touching the operations and business of defendant in California and was granted. Defendant has never done any of the things required by law to qualify it to transact business within this state.

The base of defendant's Pacific Coast operations is San Francisco, where it maintains a force of about twenty employees. In addition to the manager there are a general freight and passenger agent who attends to soliciting freight and passenger business for the ships, an accountant who attends to money matters and accounts, and a purchasing agent, all under the direction of the manager. There are two offices in San Francisco; one is in the business district and the other is at the terminal on Third Street. At this terminal freight is received and stored; there the gear and equipment for the loading and discharging of the ships are kept, and the men are hired for the ships. At San Francisco the vessels are provisioned and supplied, and at San Francisco bills of lading are issued for shipments to the foreign ports at which the steamers call. Bananas in large quantities are brought to San Francisco and Los Angeles from the foreign ports and are marketed and sold in California by Fruit Dispatch Company, a corporate affiliation of the defendant, managed by its San Francisco manager.

Defendant maintains at least one commercial bank account in San Francisco, wherein the proceeds of the sale of bananas and other merchandise are deposited. Out of this account the seamen are paid in cash, and the account is subject to checks drawn by defendant's accountant at San Francisco under the direction of its manager. Claims for damaged cargo are adjusted at the San Francisco office, and money collected for prepaid freight on outgoing shipments is deposited in the local bank account, as are also the proceeds of passenger tickets. Advertisements are carried by defendant in shipping journals published in San Francisco. The manager reports on other than routine matters to the company's New York office; but the San Francisco office is called by the defendant its division office.

■ Appellant's right under the Jones Act to sue in a state court where valid service of summons can be effected was settled in 1932 by the decision in *Bainbridge* v. *Merchants etc. Co.*, 87 U. S. 278 [53 Sup. Ct. 159, 77 L. Ed. 302, 1933 A. M. C. 32]; and the trial judge so held, in reliance on *Mitchell* v. *Pacific Steamship Co.*, decided by this department in 1930.

The question of a valid service of summons, however, is the real problem presented by this appeal.

■ We are satisfied from the facts of record, summarized above, that defendant at the time summons was served was doing business within this state; that the person upon whom service was made was its manager, within the meaning of section 411 of the Code of Civil Procedure (*Milbank v. Standard Motor Construction Co.*, 132 Cal. App. 67 [22 Pac. (2d) 271], and cases cited); that consequently—passing for the moment the question of interstate commerce—there was a valid service. The record surely shows that defendant ever since 1927 has been transacting "within the state some substantial part of its ordinary business by its officers or agents appointed and selected for that purpose". (*Davenport v. Superior Court*, 183 Cal. 506, 508 [191 Pac. 911].) Defendant earnestly contends, however, that this business is purely interstate and foreign in character, and not at all intrastate, and that to compel it to litigate in a state court is to unduly burden interstate commerce. It is further contended that a foreign corporation, even if it is present in a state (because doing an interstate and foreign business therein) may not, unless it has consented, be sued on transitory causes of action arising elsewhere, but which are unconnected with any corporate action by it within the jurisdiction. In support of this contention, defendant relies upon a long line of cases starting with *Old Wayne Mutual Life Assn.* v. *McDonough*, 204 U. S. 8 [27 Sup. Ct. 236, 51 L. Ed. 345], decided in 1906, and coming down to *Louisville & Nashville R. R. Co.* v. *Chatters* (*Southern Ry. Co.* v. *Chatters*), 279 U. S. 320 [49 Sup. Ct. 329, 73 L. Ed. 711], decided in 1929. The Old Wayne case holds that the statutory consent of a foreign corporation to be sued does not extend to causes of action arising in other states. This principle was applied in *Simon* v. *Southern Ry. Co.*, 236 U. S. 115 [35 Sup. Ct. 255, 59 L. Ed. 492], strongly relied upon by defendant, holding that service under a Louisiana statute was not "effective to give the District Court of (New) Orleans jurisdiction over a defendant as to a cause of action arising in the State of Alabama". The reason for the rule is thus given by Mr. Justice Lamar at page 130: "Otherwise, claims on contracts wherever made and suits for torts wherever committed might by virtue of such compulsory statute

be drawn to the jurisdiction of any state in which the foreign corporation might at any time be carrying on business." One of the leading cases on the question of the burdening of interstate commerce by actions in state courts is *Davis, Director General, etc.,* v. *Farmers Co-operative Equity Co.,* 262 U. S. 312 [43 Sup. Ct. 556, 67 L. Ed. 996]. There the Santa Fe road, a Kansas corporation, was sued in Minnesota, where it had no railroad, by another Kansas corporation, for a grain loss in an intrastate shipment in Kansas. Process was served upon a soliciting agent of the Santa Fe road in Minnesota under a statute of that state providing that any corporation, having an agent within the state soliciting freight or passenger traffic, could be so served. The court, in holding that the action unduly burdened interstate commerce, said: "So far as appears the transaction was in no way connected with Minnesota or with the soliciting agency there." In *Atchison, Topeka & Santa Fe Ry. Co.* v. *Wells,* 265 U. S. 101, 44 Sup. Ct. 469, 68 L. Ed. 928], Wells, a citizen of Colorado, employed by the plaintiff, was injured in New Mexico, and he sued in Texas, where the plaintiff had neither trackage nor an agent. It was held on the authority of the Davis case that the suit in Texas unduly burdened interstate commerce. In *Michigan Central R. Co.* v. *Mix,* 278 U. S. 492 [49 Sup. Ct. 207, 73 L. Ed. 470], Doyle, a resident of Michigan, was killed in that state. His widow moved to Missouri, where she sued. The railroad company was a Michigan corporation, had no line in Missouri, had never consented to be sued there, and had never been admitted to do business there. The court held that the company was not amenable to Missouri process. In *Fry* v. *Denver & Rio Grande R. R. Co.,* (District Court, N. D. Cal.) 226 Fed. 893, the action was commenced in the state court against the defendant railroad, a Colorado corporation, for personal injuries sustained by plaintiff, a passenger, in Colorado. After removal for diversity of citizenship, a demurrer challenging the jurisdiction was sustained by Judge Van Fleet upon the authority of the Old Wayne and Simon cases. The reasons for his decision were substantially the same as those found in the railroad cases just discussed, although his decision antedated the Davis case by some years. *Weinard* v. *Chicago, M. & St. Paul Ry. Co.,* 298 Fed. 977, is simply an extension

of the rule of the Davis case, and differs from it only in the fact that the defendant had part of its railroad in the state of the forum. The action was brought in the federal court in Minnesota by a resident of the state of Washington against the railroad company, a Wisconsin corporation, for personal injuries sustained by the plaintiff at Tacoma, Washington. The trackage in Minnesota, the court held, made no difference in principle; the action nevertheless burdened interstate commerce, and service of summons was quashed.

*Panstwowe Zaklady Graviozne* v. *Automobile Ins. Co. of Hartford and Baltimore & Ohio R. R. Co.*, 36 Fed. (2d) 504, was commenced in the state court and thence removed. It was an action against a railroad company engaged in interstate commerce for loss on the high seas of merchandise shipped under an Illinois bill of lading to Baltimore, and thence transshipped to a European port. "So far as appears," says the court, "the transaction was in no way connected with this state [New York], or with any agency of the defendant located here." A motion to dismiss, as against the railroad company, for lack of jurisdiction was granted on the ground of the burden upon interstate commerce and on the authority of the Old Wayne, Simon and Davis cases and *Atchison, Topeka & Santa Fe Ry. Co.* v. *Wells, supra.* In addition to the cases just discussed, the defendant relies upon *Mitchell Furniture Co.* v. *Selden Breck Construction Co.*, 257 U. S. 213 [42 Sup. Ct. 84, 66 L. Ed. 201], a suit brought in Ohio by an Ohio corporation against a Missouri corporation upon a contract made in Illinois to be performed in Michigan. The basis for the decision was that the defendant was not doing business in Ohio, and the contract sued on was neither made, nor was it to be performed, there.

It will readily be seen that in these cases cited by defendant "Where jurisdiction has been denied, the cause of action not only arose outside the state, but it was not shown to have arisen out of any business conducted by the corporation within it, or to have had any relation to any corporate act there." (*Chatters Case,* 279 U. S. 320, 328 [49 Sup. Ct. 329, 331, 73 L. Ed. 711].) In the instant case we assume for the purpose of the decision that defendant's business in California is exclusively interstate and foreign

in character. That fact, however, does not render the corporation immune from the ordinary process of the courts of a state. (*International Harvester Co.* v. *Commonwealth of Kentucky,* 234 U. S. 579 [34 Sup. Ct. 944, 58 L. Ed. 1479].) In that case the state of Kentucky had instituted a criminal proceeding in its own courts against the Harvester Company for a violation of a Kentucky anti-trust law. The precise question in the case was whether or not the state court had jurisdiction, and it was held that it had. The facts were that the company had agents within the state, soliciting orders which were sent to another state, in response to which the machines of the Harvester Company were delivered in Kentucky. There was a continuous course of shipment of machines into Kentucky. Authority was vested in the agents within the state to receive payment in money or by check or draft and to take notes payable at banks in Kentucky. The course and method of dealing were shown by circulars issued by the company to its agents disclosing a clear intent and a studied plan to keep the business strictly interstate in character. (The circulars opened with the order, ''The company's transactions hereafter with the people of Kentucky must be on a strictly interstate commerce basis''—Id.; 234 U. S. 584, 585 [34 Sup. Ct. 944, 945, 58 L. Ed. 1479]). ''This course of conduct of authorized agents within the state,'' says Mr. Justice Day at page 586, ''in our judgment constituted a doing of business there in such wise that the Harvester Company might be fairly said to have been there, doing business, and amenable to the process of the courts of the state.''

In the Davis case (*Davis* v. *Farmers' Co-operative Equity Co., supra*), Mr. Justice Brandeis (at page 315) amplifies the reasons underlying the interstate commerce rule as given by Mr. Justice Lamar, as follows: ''That the claims against interstate carriers for personal injuries and for loss and damage of freight are numerous; that the amounts demanded are large; that in many cases carriers deem it imperative, or advisable, to leave the determination of their liability to the courts; that litigation in states and jurisdictions remote from that in which the cause of action arose entails absence of employees from their customary occupations; and that this impairs efficiency in operation, and causes, directly and indirectly, heavy expense to the carriers; these are mat-

ters of common knowledge.'' It is obvious that the mainte-
nance and trial of this case in the court in which it was
commenced will impose none of these burdens. San Fran-
cisco is the port at which the ''Chiriqui'' is provisioned,
supplied and manned; and if a view or inspection of her
equipment is needed, or if the testimony of her officers or
crew is required, no more convenient or available place
can be found than San Francisco. On the other hand, a
trial of this case in New Jersey would lead to the conse-
quences, and impose the burdens, spoken of by the justices
in the quotations given above.

In the Davis case, as has been noted, ''the transaction was
in no way connected with Minnesota or with the soliciting
agency there'', but the author of the opinion was careful
to remark, ''It may be that a statute like that here assailed
would be valid although applied to suits in which the cause
of action arose elsewhere, if the transaction out of which it
arose had been entered upon within the state'' (footnote
citation to the Harvester Company case and to ''Jurisdiction
over nonresidents doing business within a state'' by Austin
W. Scott, 32 Harvard Law Review, 871, 887), and further:
''These questions are not before us, and we express no
opinion upon them.'' The questions thus left open—and,
to some extent, anticipated—in the Davis case, were squarely
presented in the *Chatters Case, supra,* where the plaintiff
Chatters, a citizen of Louisiana, bought a through ticket at
the office of the Louisville and Nashville Company in New
Orleans for a journey to Washington, D. C., on which trip
he was injured in Virginia. The Louisville and Nashville
Company was a Kentucky corporation, the Southern Railway,
a Virginia corporation. The action was brought in the federal
court in Louisiana, process was served upon the Southern's
designated agent in Louisiana (as in the Simon case) and
the Southern Company appeared specially and excepted to
the jurisdiction upon the ground that the cause of action,
which was transitory, arose outside Louisiana, and not out
of any business done by the Southern within Louisiana.
The ticket was in three parts, (1) over the Louisville and
Nashville road from New Orleans to Montgomery, Alabama,
(2) over the Atlanta & West Point road from Montgomery
to Atlanta, Georgia, and (3) over the Southern road from At-
lanta to Washington. Each of the three roads controlled the

train over its own part of the trip, and the accident happened on the Southern's tracks, in Virginia. *The ticket was bought* by Chatters at the office of the Louisville and Nashville Company *in New Orleans, that company acting as agent for the Southern in making the sale.* Mr. Justice Stone points out that the Southern "carries on in the state, through an office and agents of its own there located, continuous solicitation of freight and passenger traffic" and "maintains its own office there for the sale of tickets for passage over its own and connecting lines" (citing the Harvester Company case). He then holds that the fact that the journey upon which the passenger was injured originated in the purchase of his ticket from the Southern Railway (acting through its agent, the Louisville and Nashville Company) in Louisiana, was sufficient to render the Southern amenable to service of process in Louisiana, despite the fact that the injury was in Virginia; and thus distinguished the case from the Old Wayne and Simon cases. As said in the recent case of *American Indemnity Co.* v. *Detroit F. & S. Co.,* 63 Fed. (2d) 395, 397, respecting the Chatters case, "since the passenger's injury involved a breach of duty created by the sale of his ticket within the state, the suit was held to be so connected with business done in the state as to fall under the statute".

It is self-evident under the facts that San Francisco is the natural and logical place for the trial of this case; and, therefore, that the case is not within the spirit or reason of the rule against the burdening of interstate commerce. It is equally self-evident that in this case the fact that plaintiff was employed at San Francisco for the voyage upon which he was injured brings the case within the rule of the Chatters case. The making of the contract of employment in California brings the appellant's injury— suffered upon the high seas—into relation with defendant's business in this state, just as the purchase by Chatters of his ticket in Louisiana connected his injury with the business of the Southern Railway in the state of suit. Moreover, there are many factors present here which were entirely absent from the cases upon which defendant relies. Unlike the Simon, Davis and Fry cases, *Atchison, Topeka & Santa Fe Ry. Co.* v. *Wells, supra,* and *Michigan Central R. Co.* v. *Mix, supra* (where the rails of the interstate carriers

did not touch the state of the forum) the defendant's steamship line has San Francisco as its terminal port, and its business on this coast centers here. As in the Harvester Company case, it has in California not only an agent soliciting business, but a large force of employees including those in executive positions. Plaintiff's injury was sustained on the high seas and not within the territorial jurisdiction of any state. Added to these factors is the circumstance that plaintiff's contract of employment was to terminate in San Francisco, where it began. As far as the relations between plaintiff and defendant were concerned, this was the home port of both parties; as far as any state jurisdiction was concerned, California was the only state with respect to which both parties dealt. Furthermore, an analogy exists between this case and that of *Hireen* v. *Interstate Transit Lines,* 52 Fed. (2d) 182, District Court, N. D. Cal., where it was held that a passenger who bought a ticket in Nebraska for a trip to California, and who was injured in Nebraska, could, nevertheless, sue in this state. In so holding, Judge Kerrigan cites and quotes from the Chatters case and says: "Since the performance of defendant's contract of carriage was to terminate in California, the cause of action is sufficiently *related* to the business of the defendant within this state. The cases of *Michigan Central R. Co.* v. *Mix,* 278 U. S. 492 [49 Sup. Ct. 207, 73 L. Ed. 470], and *Missouri* v. *Taylor,* 266 U. S. 200 [45 Sup. Ct. 47, 69 L. Ed. 247, 42 A. L. R. 1232], indicate that that is the rule when the contract of carriage or consignment is to terminate in the state of suit."

Other cases than those herein cited have been presented by both sides, but it is not necessary to discuss them. We are satisfied for the reasons and upon the authority already given that the municipal court has jurisdiction of the subject matter, and of the person of defendant, and that the exercise or assertion of that jurisdiction does not unduly or unreasonably burden interstate commerce.

The judgment appealed from, together with the order quashing service of summons, is reversed, and the cause remanded to the municipal court for further proceedings looking to a trial on the merits.

Johnson, P. J., and Conlan, J., concurred.